UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| EZ Blockchain LLC<br><br>    Plaintiff,<br><br>v.<br><br>Blaise Energy Power, Inc. and<br>Mark Wald,<br><br>    Defendants. | Case No.<br><br>**VERIFIED COMPLAINT** |

1. Plaintiff EZ Blockchain LLC ("Plaintiff" or "EZ Blockchain") for its Verified Complaint against Defendants Blaise Energy Power, Inc. ("Blaise") and Mark Wald ("Wald") (collectively "Defendants") states and alleges the following.

## INTRODUCTION

2. EZ Blockchain brings this action to regain possession of certain computer equipment–worth more than $4.7 million–that is being unlawfully withheld by Blaise and to recover the substantial damages caused by Blaise's unlawful conduct, as detailed herein.

3. In short, Blaise is withholding the property at issue based on its unfounded contention that EZ Blockchain owes Blaise $70,000 in service fees pursuant to a contract in connection with a separate (and failed) data center project, despite the fact that (i) the contract (and the claimed fees) are unrelated to the property being withheld and (ii) Blaise is not owed the fees it claims because it materially the service contract and cancelled the project.

## PARTIES

4. EZ Blockchain is a limited liability company organized under the laws of the state of Delaware with its principal place of business at 311 S. Wacker Drive in Chicago, Illinois.  EZ

Blockchain's two members are Sergii Gerasymovych and Vlad Rodinoff. Mr. Gerasymovych is domiciled in the state of Illinois and Mr. Rodinoff is domiciled in the state of California.

5. Blaise is a corporation incorporated under the laws of the state of Wyoming. Blaise is registered to transact business in the state of North Dakota and its principal address is 3276 110Z Ave SW Dickinson, North Dakota. According to its website, Blaise is a "North Dakota based company founded in 2008 with the singular mission to implement practical market-based solutions to flaring in the heart of the Bakken Shale Formation."

6. Wald is an individual residing in Dickinson, North Dakota. Wald is an owner of Blaise and Blaise's registered agent.

## JURISDICTION AND VENUE

7. This Court had jurisdiction pursuant to section 1332(a)(1) of Title 28 of the United States Code because there is complete diversity among the parties and the amount in controversy exceeds $75,000.

8. Venue is proper in this Court pursuant to section 1391 of Title 28 of the United States Code because one or more defendants resides in this district and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district and because the property at issue is situated in this district.

## FACTS COMMON TO ALL COUNTS

A. Background

9. EZ Blockchain is in the business of mobile blockchain infrastructure whereby its mobile data centers are used to mine cryptocurrency. A photograph of one of EZ Blockchain's mobile data centers is attached hereto as Exhibit A.

10. Cryptocurrency is a digital or virtual currency that is secured by cryptography, which makes it nearly impossible to counterfeit.

11. Many cryptocurrencies are based on blockchain technology.

12. A blockchain is a decentralized network of computers used to record a series of transactions.

13. Put simply, the process of generating cryptocurrency, referred to in the industry as "mining", consists of computers (referred to "miners"), typically working together, processing large amounts of data to solve complex mathematical operations to validate cryptocurrency transactions and record them on a blockchain. The first computer (i.e., miner) to solve the problem presented by the blockchain receives the next block of cryptocurrency and the process begins again.

14. Cryptocurrency mining requires sophisticated hardware to process and complete mathematical operations, which are referred to the industry as "miners."

15. Miners are expensive and typically cost approximately $7,000-$10,000 each, depending on the model. Hundreds of miners typically used to run an efficient cryptocurrency mine.

16. Mining cryptocurrency also requires a large amount of electricity to power the miners on a continuous basis.

17. When running, miners generate significant amounts of heat and special attention must be given to ensure that the miners do not overheat.

18. EZ Blockchain manufacturers, sells, and operates mobile data centers which are used to house and run the miners so that they can mine cryptocurrency.

19. EZ Blockchain also rents rack space within its mobile data centers to its customers and contracts with them to provide power and internet service, which allows EZ Blockchains' customers to deploy their miners in EZ Blockchain's mobile data centers to mine cryptocurrency.

20. In accordance with its contracts with its customers, EZ Blockchain is obligated to its customers to install and monitor the miners provided by its customers within its mobile data centers and further obligated to provide electricity and internet connectivity, which is known as "Hosting."

21. Each mobile data center can hold approximately 768 miners and has an electrical capacity of 2,500 kilowatts, or 2.5 megawatts, meaning that data center is designed to receive 2.5 megawatts of electricity on a continuous basis which it distributes to the miners inside.

22. EZ Blockchain's mobile data centers and Hosting services allow it to deploy miners in locations previously thought unimaginable, like oil and gas fields, where excess gas that would otherwise be flared is used to fuel large generators, which in turn deliver power to the mobile data center.

**B. Bowline Project at Triangle Rooster**

23. EZ Blockchain contracted with Blaise to establish a flaring mitigation data center at Bowline Energy's Triangle Rooster well site in McKenzie County, North Dakota ("Bowline Project").

24. Specifically, the Bowline Project was located at Triangle 149-101-1-12-1H, 2H, 3H, 4H, 5H, 6H, 7H, 8H) located at SW1/4 Section 36, T150N, R101W – 5th Principal, McKenzie County, North Dakota ("Site").

25. The Parties began discussions regarding the Bowline Project in September 2021 including the services that Blaise would provide.

26.   Blaise had a relationship with Site well-producer, Bowline Energy ("Bowline"). Given that, Blaise agreed to install, service, and maintain the generators necessary to deliver 2,300–2,500 kilowatts of continuous power to EZ Blockchain's data center at the Site.

27.   The generators were fueled using excess gas from Bowline's well that would otherwise be flared.

28.   On September 11, 2021, Blaise indicated that it will be able to provide local support for the Bowline Project and provide between 2,300 and 2,500 kilowatts of power for a price to EZ Blockchain of less that $0.04 per kilowatt hour.

29.   On September 14, 2021, Blaise provided an updated scope of work for the Bowline Project whereby Blaise offered to provide services necessary to get the Bowline Project up and running, including a crane to unload the data center, electrical work to connect the generators to the data center, and labor to install the miners within the data center.

30.   To that end, Blaise updated the proposed master services agreement and work order, signed them, and sent them to EZ Blockchain for execution on September 15, 2021.

31.   EZ Blockchain agreed to the updated master services and work order and reverted a fully executed a copy the same day.

32.   The Master Services Agreement and Work Order are attached hereto as Exhibit B.

33.   Pursuant to the Work Order, the Parties agreed that EZ Blockchain would provide "equipment installation including delivery, off-loading, electrical grounding by licensed electrician, Internet connectivity, service, maintenance and 24X7 monitoring and management unless outsourced to [Blaise]." Ex. B at p. 7, ¶ 4(e).

34. Consistent with the Work Order, the Parties agreed to outsource such work to Blaise. In turn, Blaise subcontracted with Case Electric LLC to install of the equipment and connect the generators to the mobile data center.

35. Additionally, Blaise agreed to provide for "call-out requests" for attending to the mobile data center on Site, including "repairs, service, installation, maintenance, loading/unloading or other support requests" from EZ Blockchain at Blaise's service rate of $85.00 per hour. *See* Ex. B at p. 8, ¶ 5(f).

36. Given that Blaise would be "the boots on the ground" to get the data center up and running, EZ Blockchain sent Blaise a detailed setup guide for the particular data center to be used at the Bowline Project.

C. **Blaise Fails to Perform as Promised at Triangle Rooster**

37. As explained in more detail below, Blaise utterly failed to perform as it promised in connection with the Bowline Project by failing to deliver the required amount of power, failing to properly connect the data center, and failing to properly install, maintain, and service its generators resulting in substantial damages to EZ Blockchain.

38. Blaise agreed to "provide, service and maintain power generators ("Equipment") sufficient to produce [a] minimum [of] 2300-2500 kWs of power to run the Data Center including:

   a. Installation, connection to the Site gas course, service, maintenance and 24X7 monitoring and management; [and]

   b. Cabling from generator(s) to common distribution panel provided by [Blaise] for the first data Center."

Ex. B at p. 7, ¶ 3(a)-(b).

39. Blaise was required to provide <u>a minimum</u> of between 52,440 and 57,000 kilowatt hours of power per day.[1]  Despite its contractual agreement to do so, Blaise never delivered the required amount of power to the data center at the Site.

40. A summary of Blaise's own power generation logs, attached hereto as Exhibit C, show that its generators produced only an average of 25,330 kilowatts per day–less than half the minimum required amount.

41. Despite its contractual agreement to do so, Blaise did not service and maintain its power generators at the Site.  The generators frequently shut down automatically as a result of Blaise's failure to perform even basic service and maintenance, such as ensuring the generator motors were filled will oil.

42. Despite its contractual agreement to do so, Blaise never provided or installed the common distribution panel in breach of the Work Order.  *See* Ex. B at p. 7, ¶ 3(b).

43. The common distributional panel is a critical component of the Bowline Project because it collects the power created by the several generators (the amount of which can vary even over a short time) and ensures a steady flow of electricity to the data center.

44. Instead of using the common distribution panel, Blaise wired the several generators in parallel directly into the data center.

45. Further, Blaise did not use the service entry point on the data center to connect electrical feeder cables to the data center.

46. The data center is equipped with a service entry point, depicted in Exhibit D, which is equipped with special fittings designs to protect feeder cables and prevent arcing.  This allows

---

[1] 2,300 kilowatts equals 55,200 kilowatt hours per 24-hour day and 2,500 kilowatts equals 60,000 kilowatt hours per 24-hour day.  Blaise "gauarntee[d] power generation On-Skid monthly Service Availability of at least ninety-five percent (95%)" with nominal exceptions for downtime for preventative maintenance. *See* Ex. B at p. 8, ¶ 8.  95% of 55,200 is 52,440 and 95% of 60,000 is 57,000.

feeder cables to be connected in a safe and orderly fashion to the data center, as depicted in Exhibit E.

47. Instead of using the service entry point, Blaise cut a hole in the opposite side of the data center through which it placed the several feeder cables and insulated them with spray foam. A true and accurate photograph of Blaise's ad hoc connection is attached hereto as Exhibit F. Blaise's failure to properly install the feeder cables required that the several cables be doubled-back on themselves to be connected to the data center. *Compare* Exhibit E (the proper way) *with* Exhibit F (Blaise's way).

48. Blaise's failures as described above caused incessant electrical problems with the Bowline Project.

49. As described herein, Blaise did not conduct its operations as a reasonably prudent services provider, despite its contractual obligation to do so. *See* Ex. B at p. 2, ¶ 5 (Blaise's obligation to conduct "its operations as a reasonably prudent services provider").

50. After weeks of continued problems, Wald called EZ Blockchain's chief executive officer, Sergii Gerasymovych, on December 22, 2021, and informed him that Blaise was cancelling the Bowline Project and admitted that Blaise failed to perform under the Master Services Agreement because Blaise was not delivering the 95% uptime of power it had guaranteed. That same day, Wald sent Gerasymovych an email confirming that Blaise is "moving out of the generator business."

51. After several failed attempts to fix these ongoing problems, Blaise informed EZ Blockchain that Blaise was "done" with the Bowline Project on or about December 23, 2021.

52. Despite the aforementioned breaches and being "done" with the Bowline Project in December 2021, Blaise claims that it is entitled to be paid the full contract price under the Master Services Agreement for October 2021 through January 2022.

53. Blaise claims that it is owed more than $70,000 under the Master Services Agreement.

### D. Storage of Miners for a Second Project

54. The Master Services Agreement does not address storage of miners.

55. On October 7, 2021, Wald offered to engage a storage company, Hauck Sales and Services LLC ("Hauck Sales"), to provide shipping containers to store miners on an ongoing monthly basis. The estimated price for the containers was $140 per month each for two containers.

56. EZ Blockchain agreed that Hauck Sales would store miners in the shipping containers and that Hauck Sales would invoice Blaise, which would in-turn pass that cost on to EZ Blockchain.

57. After agreeing to the storage arrangement, EZ Blockchain shipped a total of 1,440 miners to Blaise's site in Dickinson, North Dakota to be stored in Hauck's containers. 768 miners were to be deployed at the Bowline Project and the remaining 672 miners were being stored in anticipation of a second project at a different site.

58. Hauck began storing the miners in its shipping containers in late October 2021. From that time through December 2021, Blaise passed the cost from Hauck to EZ Blockchain without any mark up.

59. EZ Blockchain paid all storage fees invoiced by Hauck.

60. While the miners are owned by EZ Blockchain's customer, EZ Blockchain holds a security interest in the miners.

61. EZ Blockchain is obligated to deploy the miners within its data centers in accordance with its customer contracts.

62. 768 of the miners were to be used in connection with the Bowline Project and were in fact deployed in the data center at the Site. At Blaise's request, the empty cardboard boxes (left over from unpacking the miners) were to be stored in one of Hauck's containers located at the well site along with other miscellaneous items including hand tools and spare parts for the data center. Blaise later transported this container to its facility in Dickinson, North Dakota.

63. The remaining 672 miners were to be stored in the second of Hauck's containers at Blaise's facility in Dickinson, North Dakota in anticipation that EZ Blockchain and Blaise would engage in a second project North Dakota. The miners that were shipped to Blaise for use on a second project are referred to herein as the "Miners."

64. Needless to say, the second project never materialized.

65. EZ Blockchain paid all costs invoiced to it by Blaise for storage of the miners. Beginning in January 2022 and going forward, EZ Blockchain and Hauck transitioned the rental from Blaise to EZ Blockchain.

66. Hauck issued its monthly invoice for the storage containers to EZ Blockchain for January 2022, which EZ Blockchain promptly paid.

**E. Blaise Steals the Miners in Storage**

67. On January 19, 2022, EZ Blockchain sent its employee to inventory the Miners in storage in the shipping container in Dickinson to prepare them for shipment to Watford City.

68. On January 19, 2022, the shipping containers were located outside at Blaise's shop in Dickinson.

69. While EZ Blockchain's employee was inventorying the Miners and staging them shipment, Mark Wald took an entire pallet of Miners and placed them in Blaise's shop in Dickinson.

70. Wald claimed that he took the pallet of Miners because he needed "assurances" that Blaise would be paid, even though it had not performed as promised in connection with the Bowline Project and the Miners in storage were not scheduled for use in connection with the Bowline Project.

71. On January 20, 2022, EZ Blockchain informed Blaise that it would pick up the Miners the following day at 9:00 a.m. from Blaise's shop in Dickinson.

72. EZ Blockchain arrived to pick up the Miners on January 21, 2022 at 9:00 a.m. However, Blaise refused to allow EZ Blockchain to pick up the containers and blocked the yard entrance with a pickup truck.

73. Multiple EZ Blockchain representatives requested that Blaise allow EZ Blockchain to pick up the Miners on January 21, 2022. Blaise and Wald refused.

74. The value of the Miners in storage exceeds $4.7 million.

75. On February 2, 2022, Blaise sent EZ Blockchain notice "per ND Century Code 35-33" that unless EZ Blockchain pays the amounts Blaise claims are due under the Master Services Agreement (approximately $70,000) by February 17, 2022, Blaise will sell the miners.

76. Blaise is not a self-service storage facility.

77. Blaise and EZ Blockchain do not have a storage rental agreement.

78. EZ Blockchain has paid all amounts due for storage of the Miners.

79. The company providing the storage containers is Hauck Services and EZ Blockchain has paid all amounts claimed due by Hauck.

80. Blaise and Wald also refuse to allow EZ Blockchain to pick up the second Hauck shipping container, which includes empty boxes for shipping the miners and other miscellaneous equipment including hand tools and paneling for a data center.

## CAUSES OF ACTION

### COUNT I – CONVERSION
(against Blaise and Wald)

81. Plaintiff restates and realleges paragraphs 1 through 80 above as if fully set forth herein.

82. Plaintiff has a property interest in the Miners and is entitled to immediate possession of the Miners.

83. As described above, Plaintiff demanded possession of the Miners.

84. Defendants refused to surrender possession of the Miners.

85. Defendants wrongfully denied Plaintiff of its interest in the Miners by refusing to return them.

86. As described herein, Defendants have tortiously detained the Miners and wrongfully exercised dominion or control over the Miners.

87. As a direct and proximate result of Defendants' conversion, Plaintiff has suffered damages in an amount to be proven at trial, including but not limited to costs incurred to recover the property at issue, and will continue to suffer irreparable harm, including but not limited to loss of possession of the Miners, reputational harm, and loss of goodwill among its customers, for which it is entitled to preliminary and permanent injunctive relief.

88. Defendants' conversion entitles to Plaintiff to exercise all available rights and remedies, including without limitation, the right to obtain preliminary and permanent injunctive relief and recover compensatory damages.

89. Plaintiff requests judgment: (a) finding that Defendants have converted the Miners, (b) awarding injunctive relief as appropriate, and (c) awarding compensatory damages in favor of Plaintiff and against Defendants, in an amount to be proven at trial along with all accrued interest and costs.

### COUNT II – UNJUST ENRICHMENT
**(against Blaise and Wald)**

90. Plaintiff restates and realleges paragraphs 1 through 80 above as if fully set forth herein.

91. By taking possession of the shipping containers, including the Miners and miscellaneous tools and parts therein, and refusing to return them to EZ Blockchain, Defendants have been unjustly enriched at the expense and impoverishment of EZ Blockchain.

92. Defendants have obtained the benefit of more than $4.7 million worth of Miners and other miscellaneous personal property at EZ Blockchain's expense without justification.

93. Justice and equity demand that the Miners be returned to EZ Blockchain.

94. As a direct and proximate result of Defendants' conduct described herein, Plaintiff has suffered and will continue to suffer irreparable harm for which it is entitled to preliminary and permanent injunctive relief.

95. Defendants' unjust enrichment entitles to Plaintiff to exercise all available rights and remedies, including without limitation, the right to obtain preliminary and permanent injunctive relief and recover compensatory damages.

### COUNT III – BREACH OF CONTRACT
**(against Blaise)**

96. Plaintiff restates and realleges paragraphs 1 through 80 above as if fully set forth herein.

97. Plaintiff and Blaise entered into the Master Services Agreement whereby, as described above, Blaise agreed to perform various services in connection with the Bowline Project as a reasonably prudent services provider.

98. As described in more detail above, Blaise breach its contractual obligations in one or more of the following ways:

   a. By failing to provide, service, maintain, monitor and manage power generators sufficient to produce 2,300–2,500 kilowatts of continuous electricity, at a 95% minimum amount of uptime, to the data center;

   b. By failing to provide and install the common distribution panel;

   c. By failing to properly install and set up the data center, including but not limited to by not using the service entry point for feeder cables; and/or

   d. By otherwise failing to conduct its operations as a reasonably prudent services provider.

99. As a direct and proximate result of Blaise's conduct set forth above, Plaintiff has suffered substantial damages including but not limited to out-of-pocket expenses to send a team to the Site to correct the harm caused by Blaise's breach, lost revenue from being off-line, and lost profits.

## **PRAYER FOR RELIEF**

100. WHEREFORE, Plaintiff EZ Blockchain LLC respectfully requests that this Court grant the following relief:

   a. Enter a temporary restraining order and/or preliminary injunction requiring that Defendants immediately surrender possession of the Miners to EZ Blockchain without the need for posting security;

b.  Enter judgment in favor of Plaintiff and against Defendants, granting all monetary and other remedies sought herein;

c.  Award Plaintiff all costs and expenses incurred in this action, including attorneys' fees where appropriate;

d.  Award Plaintiff pre- and post-judgment interest, as allowed by law;

e.  Award Plaintiff such other and further relief as the Court deems just and equitable.

Respectfully submitted,

**EZ BLOCKCHAIN LLC**

By: ___/s/ Michael Kozlowski_____

Michael Kozlowski
Esbrook P.C.
77 W. Wacker Drive Suite 4500
Chicago, IL 60601
(312) 319-7682
michael.kozlowski@esbrook.com


By: ___/s/ Timothy Q. Purdon_____

Timothy Q. Purdon
Robins Kaplan LLP
1207 West Divide Avenue Suite 200
Bismarck, North Dakota 58501
(701) 255-3000
tpurdon@robinslaplan.com

*Attorneys for Plaintiff*

## **VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America that the allegations made in the Verified Complaint are true and correct.

Executed on: February 7, 2022

**EZ Blockchain LLC**

By: *Sergii Gerasymovych*

Sergii Gerasymovych
Chief Executive Officer
EZ Blockchain, LLC